UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERNESTO CORTEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-08-CV-0657 OG (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   Honorable Orlando Garcia
      United States District Judge

**Introduction**

Plaintiff Ernesto Cortez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Cortez is not disabled for the purposes of the Social Security Act (the Act) and denying Cortez's applications for Disability Income Benefits (DIB) and Supplemental Social Security Insurance (SSI). Cortez asks the district court to reverse the Commissioner's decision and to render judgment in his favor. In the alternative, Cortez asks the district court to reverse the decision and remand the case for further proceedings.

After considering Cortez's brief in support of his complaint,[1] the brief in support of the

---

[1]Docket entry # 13.

Commissioner's decision,[2] Cortez's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

### Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

### Administrative Proceedings

Based on the record in this case, Cortez exhausted his administrative remedies prior to filing this action in federal court. Cortez first applied for DIB and SSI benefits on November 13, 2003, alleging disability beginning October 28, 2002.[5] The Commissioner denied the applications initially and on reconsideration.[6] Cortez then asked for a hearing before an

---

[2]Docket entry # 15.

[3]Docket entry # 18.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 107.

[6]*Id*. at pp. 42, 42A, 55, 65-69, 892 & 899-903.

administrative law judge (ALJ).[7]  A hearing was held on March 3, 2006.[8]  The ALJ issued a decision on August 21, 2006, determining that Cortez was insured for DIB until December 31, 2007 and concluding that Cortez is not disabled within the meaning of the Act.[9]  Cortez asked for review of the decision,[10] and filed a second application for SSI benefits.[11]  The Appeals Council reviewed the case and remanded the case to the ALJ to further evaluate Cortez's mental impairment and his subjective complaints.[12]  The remand order rendered Cortez's second application as a duplicate.  The ALJ conducted a second hearing on July 31, 2007.  The ALJ issued a second unfavorable decision on February 11, 2008.[13]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  Cortez moved for leave to proceed in forma pauperis on August 7, 2008.[14]  After I granted Cortez's request,[15] the clerk filed Cortez's complaint.[16]

---

[7]*Id*. at p. 70.

[8]*Id*. at p. 922.

[9]*Id*. at pp. 45-53.

[10]*Id*. at p. 80.

[11]*Id*. at p. 908.

[12]*Id*. at pp. 81-84.

[13]*Id*. at p. 19.

[14]Docket entry # 1.

[15]Docket entry # 2.

[16]Docket entry # 3.

**Issue Presented**

Is the ALJ's decision that Cortez is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

**Analysis**

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[17] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[19]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[20] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its

---

[17]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[18]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[19]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[20]*Martinez*, 64 F.3d at 173.

judgment for that of the Commissioner.[21] Where a claimant submits new evidence to the Appeals Council and the Appeals Council denies the claimant's request for review of the ALJ's decision, the evidence submitted for the first time to the Appeals Council becomes part of the record to be reviewed by the reviewing court.[22] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[23] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[24]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[25] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[21]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[22]*See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (explaining that the district court must consider evidence submitted for the first time to the Appeals Council because the Appeals Council considered and evaluated the evidence, and thus the evidence constitutes evidence upon which the decision complained about is based).

[23]*Martinez*, 64 F.3d at 174.

[24]*Id*.

[25]42 U.S.C. § 1382(a)(1) & (2).

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[26] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[27]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[28] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[29]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[30] If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[31] The second step involves determining whether the claimant's impairment is severe.[32] If it is not severe, the claimant is

---

[26] 42 U.S.C. § 1382c(a)(3)(A).

[27] 42 U.S.C. § 1382c(a)(3)(B).

[28] 20 C.F.R. §§ 404.1520 and 416.920.

[29] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[30] 20 C.F.R. §§ 404.1520 and 416.920.

[31] *Id*.

[32] *Id*.

deemed not disabled.[33] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[34] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[35] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[36] If the claimant is still able to do his past work, the claimant is not disabled.[37] If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[38] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[39] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[40] If the Commissioner adequately points to potential alternative employment, the burden

---

[33]*Id.*

[34]*Id.*

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Leggett*, 67 F.3d at 564.

[40]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

7

shifts back to the claimant to prove that he is unable to perform the alternative work.[41]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process. The ALJ first determined that Cortez was insured for DIB through December 31, 2007.[42] To be eligible for DIB, a person must be fully insured.[43] Because Cortez was insured through December 31, 2007, the ALJ considered whether Cortez was disabled on or before that date in considering his eligibility for DIB.

At step one, the ALJ found that Cortez had not engaged in substantial gainful activity since his alleged onset date.[44] At step two, the ALJ found that Cortez has the following severe impairments: hepatitis C, low back pain, and major depressive disorder.[45] In making this finding, the ALJ discussed evidence of somatization[46]—"the conversion of anxiety into a physical disorder or physical symptoms."[47] At step three, the ALJ found that Cortez's major depressive

---

[41]*Anderson v. Sullivan*, 887 F.2d 630, 632-3 (5th Cir. 1989).

[42]SSA record, p. 25.

[43]*See* 20 C.F.R. § 404.110. "To be fully insured [for DIB], a person needs at least six quarters of coverage, but not more than forty quarters of coverage." NAT'L ORG. OF. SOC. SEC. CLAIMANTS REPRESENTATIVES, 1-2 SOC. SEC. PRACTICE GUIDE § 2.03 (LexisNexis). The formula for determining fully insured status is a little more complicated than that, but Cortez does not challenge the Commissioner's determination about his date last insured. "There are no eligibility period requirements for the receipt of SSI benefits." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

[44]*Id*. at p. 27.

[45]*Id*.

[46]*Id*. at pp. 27-28.

[47]J.E. Schmidt, M.D., Attorney Dictionary of Med. 5-S 4395 (Matthew Bender 2005), *available on* Lexis.

8

disorder had not restricted his activities of daily living and determined that none of Cortez's impairments meets or medically equals a listed impairment.[48] At step four, the ALJ found that Cortez can walk and stand for 6 hours in an 8-hour day; lift and/or carry 10 pounds frequently and 20 pounds occasionally, with occasional bending/stooping; speak and read English at the sixth-grade level; is limited to simple jobs and the less complex of detailed jobs; and must avoid hazardous machinery and large amounts of speaking.[49] Based on this residual functional capacity, the ALJ determined that Cortez can perform light work. Relying on testimony by a vocational expert, the ALJ determined that Cortez can perform his past relevant work as a belt sander and fast food worker.[50] At step five, the ALJ determined that jobs exists in significant numbers in the national economy that Cortez can perform, and concluded that Cortez is not disabled under the Act.[51]

**C. Cortez's Allegations of Error**

<u>Whether the ALJ erred by relying on the testimony of the medical expert</u>. Cortez argues that the ALJ erred by relying on the testimony of the medical expert—he maintains the expert's testimony was flawed.[52] Cortez contends the medical expert failed to review his treatment record, failed to consider his treatment history, and failed to mention his various diagnoses. An ALJ may "ask for and consider opinions from medical experts on the nature and severity of [a

---

[48]SSA record, p. 29.

[49]*Id*. at p. 30.

[50]*Id*. at p. 35.

[51]*Id*. at p. 36.

[52]Docket entry # 13, pp. 10-13.

claimant's] impairment(s)."[53] The ALJ evaluates a medical expert's opinion in the same way the ALJ evaluates other medical opinions.[54] For this case, the ALJ obtained an expert opinion from Dr. Nancy Tarrand regarding Cortez's mental impairment. Dr. Tarrand testified that she reviewed Cortez's medical record and heard Cortez's testimony.[55] Dr. Tarrand stated that the record showed that Cortez was depressed and had some somatic symptoms.[56] Dr. Tarrand also stated that the record documented some slowing in Cortez's mental activity.[57] Dr. Tarrand opined that Cortez could perform jobs involving simple instructions, as well as a significant number of detailed job instructions.[58] Dr. Tarrand further opined that Cortez should not have to use reading and writing in his work, and he should not work around dangerous machinery or engage in commercial driving.[59] The ALJ found Dr. Tarrand's testimony to be credible[60] and determined that Cortez's major depressive disorder and schizoaffective disorder resulted in no restriction of daily living.[61]

Although Dr. Tarrand did not recite all of the diagnoses mentioned in Cortez's medical

---

[53] 20 C.F.R. § 404.1527(e)(iii).

[54] *Id*.

[55] SSA record, p. 1016.

[56] *Id*. at p. 1017.

[57] *Id*. at p. 1018.

[58] *Id*. at pp. 1018-19.

[59] *Id*. at p. 1019.

[60] *Id*. at p. 35.

[61] *Id*. at p. 29.

record, Dr. Tarrand's testimony shows that she considered all of the evidence in Cortez's record. Dr. Tarrand specifically testified about Cortez's depressive disorder and somatoform disorder. Dr. Tarrand stated that she reviewed Cortez's medical record and acknowledged that the record documented issues with mental health back to 2000.[62] She also answered questions about specific exhibits in Cortez's record.[63] Dr. Tarrand recognized that the Center for Health Care Services had not consistently diagnosed Cortez as having a somatization disorder.[64] This evidence demonstrates that Dr. Tarrand reviewed Cortez's entire record and considered his treatment history and various diagnoses. Nothing suggests otherwise. The ALJ did not err in relying on Dr. Tarrand's testimony because the ALJ was permitted to consult a medical expert and because Dr. Tarrand considered Cortez's entire record.

<u>Whether the ALJ erred by rejecting his doctor's opinion</u>. Cortez complains that the ALJ rejected his treating doctor's opinion that he was limited to lifting 10 pounds.[65] In that opinion, dated April 16, 2004, Dr. Hector Samaniego responded to a questionnaire, asking for a medical opinion about Cortez's ability to do work-related activities. Dr. Samaneigo limited Cortez to lifting and/or carrying ten pounds,[66] because of a herniated lumbar disc.

The ALJ must ordinarily give a treating physician's opinion considerable weight in determining whether a person is disabled, but the ALJ may reject the opinion of a physician when

---

[62]*Id*. at p. 1028.

[63]*Id*. at pp. 1022-28.

[64]*Id*. at p. 1027.

[65]Docket entry # 13, pp. 13-16.

[66]SSA record, p. 156.

11

the evidence supports a contrary conclusion.[67] The ALJ may assign little or no weight to a treating physician's opinion when the opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[68]

The ALJ's explanation for why he gave Cortez's treating physician's opinion very little weight follows:

> The record indicates that the claimant underwent back surgery on November 12, 1981 and subsequently returned to work. The claimant complained of upper back and neck pain and an evaluation on April 23, 2001 indicates a full range of motion, no findings of radiculopathy, and a normal evaluation (Exhibit 5F/95). The claimant reinjured his low back in a work related accident on June 26, 2002 and underwent conservative treatment to include epidural steroid injections (Exihibit 2F). The claimant was subsequently treated by Dr. Hector X. Samaneigo, Jr., M.D. from December 18, 2002 through April 16, 2004 (Exhibit 4F). Dr. Samaneigo found the claimant to have musculoskeletal ligamentous injury of the lumbar spine, a herniated disc in the lumbar spine, and lumbar radiculopathy. Dr. Samaneigo prescribed Vicodin, Clebrex, and Skelaxin for pain relief and recommended conservative treatment. On June 6, 2003, the claimant was released to return to work with a lifting restriction of 25 pounds (Exhibit 4F/3). Treating notes from Dr. Samaneigo[] are silent until 10 months later when the claimant was found to be unable to work due to his low back pain with left side radiculopathy (Exhibit 4F/2).
> * * *
> As for the opinion evidence, Dr. Samaniego submitted a statement in regard to the claimant's ability to do work related activities from a physical standpoint dated April 16, 2004 in which he indicates the claimant is limited to lifting and carrying 10 pounds occasionally; can sit, stand, and walk for only 3 hours out of the workday; must change positions every 15 to 30 minutes; must never twist, stoop, crouch, climb stairs and ladders, or push or pull; and must avoid exposure to all temperature extremes. These extreme limitations seem to be based on a herniated disc. The only lumbar MRI in the file is partly reproduced at R190. This shows the results of a 1981 back surgery, see Ex. 1F[]. Dr. Samaneigo correctly called the result a bugling disc at that time, Ex. 4F/19. Six months latter Dr. Samaneigo

---

[67]*See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[68]*See Newton*, 209 F.3d at 456.

released claimant to work with a 25 pound lifting limit, Ex. 4F/3 (Exhibit R153-R156). As noted above, the treatment records from this physician were silent for 10 months. The evidence of record does not contain any objective medical evidence to indicate any significant deterioration in the claimant's lumbar spine condition that would support this opinion. The undersigned Administrative Law Judge gives very little weight to this opinion.[69]

The MRI the ALJ referred to (R190) was done on August 28, 2002. The MRI showed mild diffuse disc bulging at L2-3; mild broad based disc protrusion at L3-4; suspected disc bulging at L4-5; and disc bulging at L5-S1.[70] Yet Dr. Samaneigo released Cortez to return to work on June 6, 2003, without any indication that Cortez's back had worsened. Dr. Samaneigo referred to the same MRI when he discharged Cortez on May 15, 2003.[71] The discharge indicates that Dr. Samaneigo did not consider Cortez's injury to be disabling at that time. Three weeks later, Dr. Samaneigo indicated that Cortez was limited to working with 25 pounds, without any medical findings indicating that Cortez's back had worsened.[72] Ten months later, Dr. Samaneigo opined that Cortez could lift only ten pounds, even though he had not seen Cortez during that ten months. Dr. Samaneigo's treatment records reflect nothing supporting this change of opinion. Although Cortez contends that Dr. Samaniego's opinion is consistent with a March 20, 2007 Xray of his back, a subsequent Xray[73] does not render Dr. Samaneigo's opinion reliable if the

---

[69]*Id*. at p. 34.

[70]*Id*. at. p. 420.

[71]*Id*. at p. 215.

[72]*Id*. at p. 213.

[73]The Xray was obtained for a consultative examination by Dr. Hilda Gonzalez-Saenz. SSA record, p. 681-83. Dr. Gonzalez-Saenz opined that Cortez's back pain was "most likely due to injury and history of herniated disc." *Id*. at p. 682.

opinion was not based on objective medical findings at the time he rendered the opinion. The ALJ did not err by rejecting Dr. Samaneigo's April 16, 2004 opinion.

<u>Whether substantial evidence supports the ALJ's conclusion</u>. Having addressed Cortez's allegations of error, the next question is whether substantial evidence supports the ALJ's conclusion that Cortez is not disabled. The following substantial evidence supports the ALJ's conclusion: (1) mental health treatment notes indicating that Cortez's depression improved with medication and that his depression was stable;[74] (2) examination by state-examining physician Dr. Hameed Dosunmu on July 20, 2004;[75] (3) physical residual functional capacity opinion by Dr. Bonnie Blacklock, dated August 4, 2004;[76] (4) examination by Dr. Hilda Gonzalez-Saenz on

---

[74]SSA record, p. 298 (on Nov. 29, 2001, stating that improvement had been remarkable with medication); p. 394 (on Mar. 11, 2005, writing that Cortez reported feeling better and characterizing Cortez's depression as stable); 387 (on May 5, 2005, characterizing depression as stable); 113 (on May 17, 2005, reporting being less depressed); 732 (on Apr. 20, 2006, reporting that he was taking less medication than prescribed, but that he had improved mood); p. 600 (stating that he was doing well; doctor noted somatization); p. 637 (observing improved mood with increased medication); & p. 802 (denying depression).

[75]*Id*. at p. 354-56 (reporting that Cortez had normal gait and station, was able to stand on heels and toes without difficulty, squat all the way down and rise without difficulty, could bend halfway down due to back pain, had tenderness to palpation of the spine, and had limited range of motion in dorsolumbar forward flexion and extension).

[76]*Id*. at p. 359-64 (opining that Cortez can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour day; and occasionally stoop and crouch).

March 20, 2007;[77] (5) psychological evaluation by Dr. Edwin Gerwell on April 2, 2007;[78] (6) psychiatric review technique by Dr. John Ferguson, dated May 3, 2007;[79] and (7) a mental residual functional capacity assessment by Dr. Robin Rosenbeck, dated May 14, 2007.[80] The ALJ's decision comports with relevant legal standards.

---

[77]*Id*. at 681-83 (finding tenderness in back from L1 down through the sacrum, Cortez could squat and rise without pain or difficulty, straight-leg raising test positive bilaterally at 45 degrees, and Cortez could walk heels and toes with balance difficulty, mild spasm in right paraspinal muscles, about 30 degrees flexion in lumbar spine, and markedly diminished height of the disc between L5 and S1).

[78]*Id*. at pp. 684-87 (reporting a history of mild to moderate depression which appeared to be stabilized and characterizing Cortez's prognosis as fair to guarded).

[79]*Id*. at pp. 674-705 (reporting the following limitations due to depressive disorder: mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace).

[80]*Id*. at pp. 708-10 (making the following assessment: Cortez is not significantly limited in (1) the ability to remember locations and work-like procedures; (2) the ability to understand and remember very short and simple instructions; (3) the ability to carry out very short and simple instructions; (4) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) the ability to sustain an ordinary routine without special supervision; (6) the ability to work in coordination with or proximity to others without being distracted by them; (7) the ability to make simple work-related decisions; (8) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (9) the ability to interact with the general public; (10) the ability to ask for simple questions or request assistance; (11) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (12) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (13) the ability to be aware of normal hazards and take precautions; (14) the ability to travel in unfamiliar places or use public transportation; or (15) the ability to set realistic goals or make plans independently of others; Cortez is moderately limited in (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to accept instructions and respond appropriately to criticism from supervisors; and (5) the ability to respond approximately to changes in the work setting; and Cortez can understand, remember, and carry out detailed but not complex instructions; make decisions; attend and concentrate for extended periods; and accept instructions and respond appropriately to changes in routine work setting).

## Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Cortez's request for relief (docket entry # 3) and AFFIRMING the Commissioner's decision.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[81] **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[82] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved

---

[81] 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[82] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[83]

**SIGNED** on July 28, 2009.

_Nancy Stein Nowak_
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[83]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).